UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
JOHN MICHAEL COHAN, living,
Plaintiff,
v.
UNITED STATES TRUSTEE PROGRAM,
UNITES STATES TRUSTEE SCOTT BOMKAMP, in his official capacity,
and
SCOTT BOMKAMP, in his individual capacity,
JOHN AND JANE DOES 1-100,
Defendants.
Case No. 25-cv-2009

### Request for Clerk's Entry of Default Pursuant to Rule 55(a)

Plaintiff, John Michael Cohan, respectfully requests that the Clerk of the Court enter default against Defendant(s) [Defendant(s) Name(s)], pursuant to Federal Rule of Civil Procedure 55(a), for failure to plead or otherwise defend in this action, as follows:

1. SERVICE AND FAILURE TO RESPOND

Pursuant to Federal Rule of Civil Procedure 12(a), Defendant(s) were required to file a responsive pleading within 21 days after service (or 60 days if waived under Rule 4(d)). Defendant(s) were duly served with the Summons and Complaint, as evidenced by the attached Proof(s) of Service (Exhibit A).

To date, Defendant(s) have failed to file an answer, motion, or other responsive pleading as required by law.

2. BASIS FOR ENTRY OF DEFAULT

Under Rule 55(a), when a party "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." *See Fed. R. Civ. P. 55(a); Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986) (default proper where defendant fails to respond).

Because Defendant(s) have neither appeared nor responded within the time prescribed by law, Plaintiff respectfully requests that the Clerk enter default against Defendant(s).

3. CONCLUSION

WHEREFORE, Plaintiff requests that the Clerk enter default against Defendant(s) for failure to plead or otherwise defend in this action.

RECEIVED

AUG 11 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

Dated: 08-11-2025
Respectfully submitted in good faith,

John Michael Cohan, without prejudice, without recourse, UCC 1-308, 1-103
iustusprocessusa@outlook.com

## CERTIFICATE OF SERVICE

I hereby certify that on 08-11-2025, I served a true and correct copy of this document upon the Defendants, by placing the documents in the United States mail.

Attachments:

Exhibit A: Proofs of Service of Summons and Complaint on Defendants
Exhibit B: Declaration of Non-Response
Exhibit C: Screenshot of UST 341 Audio Tampering
Exhibit D: Internal Memorandum written by and Declaration filed by 12 Year FINRA veteran Adam Walker, Esq.

# EXHIBIT A



# EXHIBIT B

**Declaration of Non-Response**

I, John Michael Cohan, declare as follows:

I am the Plaintiff in this action and make this declaration based on my personal knowledge.

1.  The Defendants were served with the Summons and Complaint in this matter. Proof(s) of Service were previously filed with this Court.

2.  The Defendants' deadline to respond or otherwise plead has expired.

3.  As of the date of this declaration, no answer, motion, or other response has been filed or served by any of the Defendants.

4.  I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: 08-11-2025
Respectfully submitted in good faith,

John Michael Cohan, without prejudice, without recourse, UCC 1-308, 1-103
iustusprocessus@outlook.com

# EXHIBIT C



# EXHIBIT D

 Outlook

**Rough draft -- opposition to US Trustee's 2d motion**

From Adam Walker <adam@awsecuritieslaw.com>
Date Fri 7/19/2024 6:09 PM
To    David from Genie Investments <dhughes@genieinvestments.com>; John from Genie Investments <jmcohan@genieinvestments.com>

📎 1 attachment (42 KB)
Opp UST's 2d Motion Appt Trustee.docx;

Attached is the current draft opposition to the US Trustee's motion. It's far from complete -- needs to be bulked up in places and I'll add much more polish to it. This lets you see where I'm heading with it and how I see it coming together.

Let me know if you have concerns, questions, suggestions, etc.


Adam Walker
AW Securities Law
www.awsecuritieslaw.com
(816) 226-6476

### 3. *The UST cannot meet its burden of demonstrating that Genie's loans to affiliated entities constituted either fraud or gross mismanagement.*

The UST's motion brands loans from Genie to six affiliated entities as "fraudulent transfers and not true loans."[13] The UST alleges, almost in passing, direct evidence of fraudulent intent in the transfers from Genie to its affiliate, Better Methods. This allegation falls well short of the movant's burden of proof ad, moreover, misstates the Report's findings. According to the UST, "The direct evidence is the express purpose of the transfers to Better Methods as asset protection from the Debtor's creditors."[14] As support for this allegation, the UST cites paragraph 188 of the Examiner's Report, which states, in its entirety, "According to [John Michael] Cohan, Better Methods is an asset management company set up to protect the Debtor's assets and the assets of the Debtor's clients." The "express purpose" alleged by the UST as direct evidence of fraud is itself a fraud, fabricated by the UST and unsupported by any evidence in the Report or elsewhere in the record of this case.

The UST also asks the Court to find circumstantial evidence of fraudulent intent. The UST recites the "badges of fraud" often employed by Federal Courts of Appeals in determining, for purposes of 11 U.S.C. § 548, whether a debtor "intended to hinder, delay, or defraud" creditors. The UST's motion only addresses some of those factors, however, and does so in an extremely cursory fashion. It states, for example:

- The transfers at issue occurred "while the Debtor was being sued or was under threat of suit for failing to fund loans."[15]

- Genie received "less than the equivalent value based on the non-market nature of the loans."[16]

- The funds were transferred "in a concealed manner attempting to disguise the fraudulent transfers as loans."[17]

---

[13]    Second Mot. ¶ 16.

[14]    Second Mot. ¶ 17.

[15]    Second Mot. ¶ 19.

[16]    Second Mot. ¶ 19.

[17]    Second Mot. ¶ 19.

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

In re:

|  |  |
|---|---|
| GENIE INVESTMENTS NV, INC. | Case No.: 3:24-bk-00496-BAJ |
| Debtor. | Chapter 11 |

## DECLARATION OF ADAM B. WALKER

STATE OF MISSOURI

COUNTY OF JACKSON

The undersigned, ADAM B. WALKER, declares as follows:

1. I, ADAM B. WALKER, am an attorney licensed to practice in Missouri. I am the owner and manager of Walker Law Office, LLC d/b/a AW Securities Law. I previously worked for more than 12 years as an enforcement lawyer for the Financial Industry Regulatory Authority (FINRA), where I routinely investigated fraudulent and potentially fraudulent investment activity.

2. I began representing Genie Investments in or around July 2023 at the request of one of its owners, David Hughes. I had previously done legal work for another business in which Mr. Hughes also has an ownership interest. Before July 2023 I was aware that Genie existed and that it was in the lending business, but I had no other knowledge of or involvement with Genie.

3. In July 2023, Genie asked me to help resolve a contract dispute between it and Velanos Principal Capital. I learned that Genie and Velanos had executed a "Joint Venture Agreement" (JVA) in October 2022 and subsequently amended it three times. Through conversations with

Genie's principals and review of the JVA and its amendments, I learned the essential terms of the agreement, which were:

- Genie and Velanos agreed to form a joint venture.

- Genie agreed to contribute $9.0 million in capital to the joint venture.

- Velanos agreed to use the $9.0 million capital contribution to buy and sell standby letters of credit (SBLCs).

- Velanos agreed to distribute profits from the SBLC transactions to Genie within 60 days of Genie's capital contributions.

- The JVA, as amended, stated that Velanos would return a total of $75 million to Genie, consisting of the $9.0 million capital contribution and $66 million in profits.

4. As of July 2023, Velanos had not distributed any profits to Genie and had returned only $500,000 of its capital contributions. Velanos was, therefore, in material breach of the JVA.

5. I also learned that Genie, shortly before executing the JVA, retained an attorney, referred to herein as "SO," to represent it with respect to what was then the "proposed joint venture" between Genie and Velanos. SO was and still is a partner with an established New York-based law firm.

6. Almost immediately after talking with Genie about the Velanos transaction and reviewing the JVA, I strongly suspected that the SBLC-trading program offered by Velanos was fraudulent. With minimal research, I found numerous judicial opinions, press releases, and other materials supporting my suspicions. The U.S. Securities and Exchange Commission, Federal Bureau of Investigation, Federal Trade Commission, and U.S. Department of Treasury, in addition to other regulators and law-enforcement agencies, have in recent years issued warnings to the public about fraudulent prime-banking scams, including many involving fictitious SBLC trading.

7. On or about July 24, 2023, I spoke with SO by telephone for approximately one hour to talk, among other things, about his review of the JVA, his knowledge of and experience with

2

SBLC trading, and whether he viewed the investments as potentially fraudulent or had any other reservations about Genie entrusting its capital to Velanos for the purposes described in the JVA.

8. SO told me that he had extensive background with SBLCs, which he characterized as a legitimate investment used in "high level trade finance." He described SBLC trading as a "financing mechanism" that arose from the 1944 Bretton-Woods agreement, which created the World Bank and the International Monetary Fund.

9. SO represented that Velanos, as promised, had used the $9.0 million in capital that Genie contributed to the joint venture to make profitable SBLC trades. SO acknowledged, however, that he had never received detailed information about any SBLC transactions that Velanos supposedly made.

10. I asked SO to describe how SBLC trading could generate massive profits in a matter of weeks. His response lacked detail. He stated only that it was a "rinse and repeat" process of buying SBLCs at a discount with ensuing profitable sales already prearranged. SO also repeatedly stated that there is "just a lot of leverage that's involved" or some variation thereof.

11. I asked SO if he was aware that SBLC trading was a frequent subject of fraud alerts and enforcement actions, both civil and criminal, by the federal government; he said that he was, but contended nonetheless that what Velanos promised Genie was not fraud. When I asked him how he knew that what Velanos promised was different from the numerous and well-publicized instances of fraud involving SBLCs, he stated that Velanos had "syndicated" the funds. He added, however, that he did not know the particulars of Velanos' ostensible syndication arrangement.

12. I have conducted extensive research into SBLC and other "prime banking" scams. In doing so, I learned that certain phrases, terms, and references are common among SBLC scams. The JVA contains several such phrases and terms. Likewise, SO described SBLC trading to me as

3

"royal-family type stuff" that happens every day, although not in the United States. According to SO, the U.S. government does not want its citizens involved in SBLC trading. Such assertions are often cited by law enforcement and regulators as markers of SBLC and other varieties of prime-banking fraud.

13. The JVA contains other "red flags" of fraud. For example, Velanos promised to generate an extremely high rate of return – more than 800% – in a matter of weeks. It is also, in my professional opinion, very poorly drafted, with some passages best described as gibberish.

14. Genie terminated its representation by SO and his law firm on or around July 24, 2023. On Genie's behalf, I requested all records from SO's representation of Genie. After several weeks' delay, SO provided what he described as the complete client file. That file, which I have reviewed, contains no documentation indicating that SO:

- conducted any meaningful investigation into Velanos, its principals, or its affiliates,

- noted any red flags in the JVA or any potential that the proposed investment was fraudulent,

- advised Genie of any appreciable risk of losing all or a portion of its principal, or

- mentioned to Genie that the transaction bore similarities to a well-known and heavily publicized type of investment fraud.

15. Based on my investigation and analysis of the JVA and my research into prime-banking fraud, I believe the SBLC trading Velanos promised to conduct with Genie's money was at all times fictitious and blatantly fraudulent.

16. Based on my communications with SO and my review of the client file obtained from him, I believe that SO's review of the JVA was inadequate; that he failed to conduct an appropriate and thorough investigation of the transaction, Velanos, and/or its principals and affiliates; and that, as a result, he likely did not discharge his professional obligations to Genie. For these reasons, it

4

is my opinion that Genie has a colorable claim against its former lawyer and law firm for professional malpractice. I am not equipped, however, to estimate any potential recovery if Genie were to pursue such an action.

17. Although many outside observers now impugn Genie's business judgment and competence for having invested in a fraudulent enterprise, it is critical to acknowledge that Genie did so only after receiving the advice of a licensed attorney from a well-regarded law firm, which it retained specifically to guard against placing its money in an illegitimate investment. Whatever one might say with the benefit of hindsight, the proper lens for evaluating Genie's competence to manage its affairs requires consideration of its entire operating history and the fact that it sought, paid for, and relied on the assistance of legal counsel that, by all appearances, had the experience and knowledge to advise it appropriately.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 14, 2024.

Adam B. Walker

WALKER LAW OFFICE, LLC d/b/a AW
SECURITIES LAW

5