**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JOHN MICHAEL COHAN,

      *Plaintiff*,

    v.

SCOTT BOMKAMP, *et al.*,

      *Defendants.*

Civil Action No. 25-2009 (RDM)

**MEMORANDUM OPINION**

This suit deals with matters a long way from home: a proceeding pending before the United States Bankruptcy Court for the Middle District of Florida involving a company in which Plaintiff "is the principal."  Dkt. 29 at 1 (Am. Compl. ¶ 4).  Plaintiff John Michael Cohan, proceeding *pro se*, alleges that Defendant Scott Bomkamp, an attorney with the U.S. Trustee Program in the Department of Justice, permitted Plaintiff's former romantic partner to participate in a conference call during that bankruptcy proceeding despite having been told that doing so would violate a restraining order, in order to retaliate against Plaintiff for his litigation activities in that case.  Plaintiff further claims that Bomkamp then attempted to conceal his misconduct by removing evidence of the interaction from the bankruptcy court's record.  *See generally id.*  Plaintiff seeks monetary damages for his constitutional injuries under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Represented by the U.S. Department of Justice, Bomkamp has moved to dismiss Cohan's amended complaint in its entirety.  *See* Dkt. 51.  Plaintiff, for his part, has filed a motion seeking to recuse Bomkamp from playing any further role in the bankruptcy case, *see* Dkt. 42, and has asked the Court to take judicial notice of documents related to the alleged violation of the

restraining order, *see* Dkt. 46.  After those motions were briefed, Plaintiff also filed an (opposed) motion for leave to file a second amended complaint.  *See* Dkt. 67.  For the reasons that follow, the Court will **GRANT** Defendant's motion to dismiss, **DENY** Plaintiff's motion for an order to show cause, **GRANT** in part and **DENY** in part Plaintiff's motion to take judicial notice, and **DENY** as futile Plaintiff's motion for leave to file a second amended complaint.

## I. BACKGROUND

### A.    Factual Background

The following factual allegations are taken from Plaintiff's amended complaint and its exhibits, *see* Dkt. 29 (Am. Compl.), which the Court accepts as true for the purpose of resolving the pending motion to dismiss, as well as from materials subject to judicial notice.  *See Gordon v. U.S. Capitol Police*, 778 F.3d 158, 163–64 (D.C. Cir. 2015) ("[U]nder Rule 12(b)(6) [district courts] must accept the complaint's allegations as true and draw all reasonable inferences in favor of the non-moving party."); Fed. R. Civ. P. 10(c); *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1213 (D.C. Cir. 2020) ("[D]istrict courts may properly take judicial notice of proceedings and filings in other courts.").

Cohan is the principal of an investment company called Genie Investments NV, Inc. ("Genie").  Dkt. 29 at 1 (Am. Compl. ¶ 4).  In 2024, Genie filed a petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Middle District of Florida before Bankruptcy Judge Burgess.[1]  *Id.* at 2 (Am. Compl. ¶ 6); *see In re Genie Invs. NV Inc.*, 3:24-bk-

---

[1] Plaintiff's complaint gives a 2023 date for the filing of the bankruptcy proceeding, Dkt. 29 at 2 (Am. Compl. ¶ 6), but the corresponding filing date on the Bankruptcy Court's docket is 2024, *see* Voluntary Petition, *In re Genie* (Bankr. M.D. Fla. Feb. 21, 2024), Dkt. 1.

496-BAJ (Bankr. M.D. Fla.) ("*In re Genie*").[2]  On March 5, 2024, the U.S. Trustee filed a motion asking the Bankruptcy Court to appoint a Chapter 11 Trustee or, in the alternative, to appoint a bankruptcy examiner, to dismiss the case, or to convert the bankruptcy proceeding to a Chapter 7 bankruptcy.[3]  *See* U.S. Trustee's Expedited Motion, *In re Genie* (Bankr. M.D. Fla. Mar. 5, 2024), Dkt. 20.  The U.S. Trustee argued that Genie had "conducted fraudulent schemes against small business owners" by promising to provide loans conditional on prospective clients making advance "prepaid interest" payments, and then failing either to make the promised loans or to return the clients' money.  *Id.* at 1.  That motion was signed by Scott Bomkamp, a trial attorney in the Office of the U.S. Trustee in Florida.  *Id.* at 10.  Genie opposed the motion, portraying itself as a victim of a fraudulent scheme by a different enterprise, Velanos, with whom Genie had invested.  Response to Expedited Motion at 5–10, *In re Genie* (Bankr. M.D. Fla. Mar. 15, 2024), Dkt. 34.  In its opposition, Genie also included a declaration from Adam B. Walker, an attorney retained by the company, in which Walker attested that previous counsel for Genie had misled it into investing with Velanos.  *Id.* at 100–04 (Walker Decl.).  The Bankruptcy Court held a two-day trial and elected to appoint an examiner to look into Genie's alleged fraud.  *See* Order, *In re Genie* (Bankr. M.D. Fla. Apr. 11, 2024), Dkt. 60.

---

[2] Several of the relevant filings from *In re Genie* are attached as exhibits to Plaintiff's original complaint.  *See* Dkt. 1 (Compl.).  For the sake of clarity and consistency, the Court will cite directly to the *In re Genie* docket when discussing materials filed in that case.

[3] By way of background, the U.S. Trustee Program is a component of the Department of Justice tasked with handling administrative and regulatory functions in bankruptcy proceedings to "promote the integrity and efficiency of the bankruptcy system for the benefit of all stakeholders." *About the U.S. Trustee Program*, U.S. Dep't of Just., https://perma.cc/HCB2-3H3D; *see Siegel v. Fitzgerald*, 596 U.S. 464, 468–69 (2022).  In a Chapter 11 bankruptcy, "[the] debtor and creditors try to negotiate a plan that will govern the distribution of valuable assets from the debtor's estate and often keep the business operating as a going concern." *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 455 (2017).  In a Chapter 7 bankruptcy, by contrast, "[the] trustee liquidates the debtor's assets and distributes them to creditors." *Id.*

While that investigation was underway, on April 17, 2024, Bomkamp oversaw a "341 Meeting" for Genie's bankruptcy proceeding. Dkt. 29 at 3 (Am. Compl. ¶ 15); *see* Min. Entry, *In re Genie* (Bankr. M.D. Fla. Apr. 17, 2024). Section 341 of the Bankruptcy Code provides that "the [U.S.] trustee shall convene and preside at a meeting of creditors," which is not attended by the Bankruptcy Judge and at which "[t]he debtor shall appear and submit to examination under oath" by the creditors. 11 U.S.C. §§ 341, 343. Prior to the meeting, Cohan had explained to Bomkamp that he had an active restraining order against his former romantic partner Peace Ekuta and expressed concern that Ekuta might seek to participate in the proceedings. Dkt. 29 at 3 (Am. Compl. ¶ 16); *id.* at 40 (Hughes Aff.). As Cohan had predicted, Ekuta joined the 341 Meeting using the alias "Agent Amber Adams." *Id.* at 3 (Am Compl. ¶ 24). Cohan, who recognized Ekuta's voice, alerted Bomkamp and threatened to bring suit if Bomkamp continued to allow Ekuta to participate on the call in violation of the restraining order. *Id.* (Am. Compl. ¶ 17); *id.* at 40 (Hughes Aff.). Bomkamp failed to take action. *Id.* at 3 (Am. Compl. ¶ 24); *id.* at 40 (Hughes Aff.). When Cohan subsequently sought to review the official audio recording of the call, he discovered that the conversation between him and Bomkamp, where Cohan objected to Ekuta's presence and threatened to sue, had been edited out. *Id.* at 3 (Am. Compl. ¶¶ 18–21). More than a year after that meeting, Cohan went to the Jacksonville Sheriff's Office in Florida to report Ekuta's presence (as well as other communication attempts), Dkt. 46 at 8–11, and a Florida judge issued a warrant for Ekuta's arrest in November 2025, *id.* at 4.

Meanwhile, the court-appointed bankruptcy examiner, Maria M. Yip, filed her report on Genie's activities on June 28, 2024. *See* Examiner's Report, *In re Genie* (Bankr. M.D. Fla. June 28, 2024), Dkt. 146. The Examiner's Report determined that Genie lacked "an ongoing viable business;" that Genie had (in an act that the examiner characterized as "gross mismanagement of

the customer's funds") transferred $9 million of customer funds to Velanos, which had promised "a 100% return in 30 days and profit participation up to approximately 900% in total;" that it was unlikely that Genie would be able to recover those funds from Velanos; and that Genie's principals, including Cohan, had separately transferred Genie customer funds to other companies controlled by the Genie principals on preferential terms.  *Id.* at 32–49, 51–54.

In light of the Examiner's Report, the U.S. Trustee filed a second motion, also signed by Bomkamp, again asking the Bankruptcy Court to appoint a Chapter 11 trustee, to dismiss the case, or to convert the proceeding to a Chapter 7 bankruptcy.  *See* U.S. Trustee's Second Motion, *In re Genie* (Bankr. M.D. Fla. July 12, 2024), Dkt. 154.  The U.S. Trustee posited that the Examiner's Report "confirm[ed] . . . the worst fears about Genie" by showing that it had "engaged in fraud and gross mismanagement."  *Id.* at 2.  Genie filed an opposition to the motion, arguing both that the Examiner's Report was itself "rife with inaccuracies, unsupported conclusions, and omissions of material and pertinent evidence" and that the U.S. Trustee had mischaracterized the Report in any case because "nowhere in the 51-page Report is there any finding or conclusion that Genie engaged in fraud."  Opposition to Second Motion at 2–3, *In re Genie* (Bankr. M.D. Fla. July 26, 2024), Dkt. 182.  Genie instead maintained that the company had itself been a victim of Velanos's own fraud.  *Id.* at 5.  Judge Burgess nonetheless granted the U.S. Trustee's Second Motion and converted Genie's bankruptcy to a Chapter 7 proceeding.  *See* Order, *In re Genie* (Bankr. M.D. Fla. Aug. 9, 2024), Dkt. 203.

B.     **Procedural History**

Cohan filed this suit in June 2025, naming the U.S. Trustee Program, Bomkamp (in both his official and individual capacities), and 100 unnamed persons as Defendants.  Dkt. 1 at 2 (Compl. ¶¶ 2–5).  In that complaint, Cohan asserted both constitutional *Bivens* claims and common law tort claims against Bomkamp, as well as a wrongful conversion claim against the

U.S. Trustee Program for "fraudulently initiating and perpetuating Chapter 7 proceedings based on knowingly false allegations of fraud, tampered evidence, and procedural misconduct." *Id.* at 3–4 (Compl. ¶¶ 1–6). Defendants filed a Westfall Certification representing that "Bomkamp was acting within the scope of his employment as an officer or employee of the United States at the time of the incidents alleged in this action," such that the United States would be substituted as a defendant in Bomkamp's place for any common law tort claims against him. Dkt. 17 at 1; *see* 28 U.S.C. § 2679(d)(1). Defendants then moved to dismiss the complaint in its entirety, arguing, among other things, that the claims against the United States were barred by sovereign immunity, that Plaintiff failed to state a claim for *Bivens* relief, and that Plaintiff's objections to the *In re Genie* proceeding ought to be litigated in that forum rather than in a collateral civil suit. *See generally* Dkt. 18. In response, Plaintiff amended his complaint as of right under Federal Rule of Civil Procedure 15(a)(1)(B), *see* Dkt. 29 (Am. Compl.), which mooted Defendants' first motion to dismiss, *see* Min. Order (Oct. 14, 2025).

In his amended complaint, Plaintiff abandoned the claims against the U.S. Trustee Program and against Bomkamp in his official capacity. The complaint instead asserts three *Bivens* claims for damages against Bomkamp in his individual capacity, all brought under the Fifth Amendment.[4] First, Plaintiff alleges that Bomkamp's purported tampering with the recording of the 341 Meeting violated his right to due process. Dkt. 29 at 5–6 (Am. Compl. ¶¶ 31–37). Second, he alleges that Bomkamp's intentional violation of the restraining order "shock[ed] the conscience" and violated his Fifth Amendment rights. *Id.* at 6 (Am. Compl. ¶¶ 38–43). Third, he alleges that Bomkamp interfered with his right to access the courts by

---

[4] The amended complaint also includes ten "John and Jane Doe[]" defendants "to capture any yet-unnamed co-conspirators or participants." Dkt. 29 at 1 (Am. Compl. ¶ 5).

permitting Ekuta to participate in the 341 Meeting, tampering with the audio recording, and then subsequently attempting to evade service of process in this case.[5] *Id.* at 6–7 (Am. Compl. ¶¶ 44–50). Cohan seeks $10 million in compensatory damages and $15 million in punitive damages. *Id.* at 7 (Am. Compl.).

Plaintiff followed his amended complaint with a motion for an order to show cause asking that Bomkamp be forbidden from overseeing the *In re Genie* proceeding in light of this litigation.[6] *See* Dkt. 42. He also filed a motion asking the Court to take judicial notice of a Florida police report and an email from a Florida Assistant State Attorney regarding Ekuta's alleged violation of the restraining order. *See* Dkt. 46. Defendant then moved to dismiss the amended complaint in its entirety, again arguing that Plaintiff had failed to state a claim for *Bivens* relief and that Bomkamp was protected by both absolute and qualified immunity. *See* Dkt. 51. The motion also responded to Plaintiff's motion for an order to show cause. *Id*. at 30–33. The Court directed Plaintiff to file a response to the motion to dismiss, *see* Dkt. 53, and Plaintiff opposed the motion, *see* Dkt. 56. Almost two months after filing his opposition, Plaintiff filed a motion for leave to file a second amended complaint. *See* Dkt. 67. Defendant opposed that motion as untimely, prejudicial, and futile. *See* Dkt. 70.

Plaintiff's motions to take judicial notice and for an order to show cause, Defendant's motion to dismiss, and Plaintiff's motion for leave to file an amended complaint are now before the Court.

---

[5] Plaintiff's efforts to serve Bomkamp were delayed by the federal government shutdown in fall 2025. *See* Min. Order (Oct. 17, 2025).

[6] Plaintiff had previously filed a similar motion, *see* Dkt. 22, which the Court denied without prejudice as premature because Bomkamp had not yet been served, *see* Min. Order (Oct. 17, 2025).

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified).  A court must consider the whole complaint, accepting factual allegations as true and construing all reasonable inferences in favor of the plaintiff.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But a court "need not accept as true 'a legal conclusion couched as a factual allegation,' nor inferences that are unsupported by the facts set out in the complaint."  *Laughlin v. Holder*, 923 F. Supp. 2d 204, 209 (D.D.C. 2013) (quoting *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006)).  In applying these standards, moreover, courts must be mindful that *pro se* filings are "to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation modified).

## III.  ANALYSIS

### A.     Judicial Notice

The Court begins with Plaintiff's request that the Court take judicial notice of a Florida police report detailing his claim that Ekuta (whom the police report refers to as "Peace Freedom") violated the restraining order by participating in the 341 Meeting, and an email from a Florida Assistant State Attorney reporting that a warrant had been issued in relation to the violation.  *See* Dkt. 46.  This motion adds little, if anything, to the Court's consideration of the pending motion to dismiss, as Plaintiff has alleged that Ekuta violated the restraining order during the 341 Meeting, and the Court takes that allegation as true for present purposes.  *See* Dkt. 29 at 3 (Am. Compl. ¶¶ 16–17, 24).  The Court will nonetheless take judicial notice of the police

report, which is "a public record subject to judicial notice." *Spencer v. District of Columbia*, 168

F. Supp. 3d 114, 117 (D.D.C. 2016) (citation modified). The email chain does not obviously so

qualify (and Plaintiff does not provide a copy of the warrant itself), but the Court will

nonetheless accept (at least for present purposes) that a Florida judge issued a warrant for

Ekuta's arrest in relation to the incident—which, again, does not affect the disposition of the

case, as the Court is already required to presume that the events in question occurred as Plaintiff

alleges.

In the motion to take judicial notice, Plaintiff also suggests that the Full Faith and Credit

Clause of the United States Constitution, along with 28 U.S.C. § 1738, requires the Court to give

some unspecified dispositive effect to the issuing of the Florida warrant. *See* Dkt. 46 at 1. The

Full Faith and Credit Clause is "not binding on federal courts," *Univ. of Tenn. v. Elliott*, 478 U.S.

788, 799 (1986), although Section 1738 does direct federal courts to give state court judgments

preclusive effect in federal court, *see Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75,

80–81 (1984). This case does not, however, require (or empower) this Court to enforce the

Florida arrest warrant or otherwise to adjudicate Ekuta's alleged offence. Insofar as Plaintiff's

motion asks the Court to go further than recognize the existence of the arrest warrant as an

(alleged) factual matter, the Court declines to do so.

## B.      Motion to Dismiss

Proceeding to the merits of the motion to dismiss, Plaintiff's operative complaint asserts

three *Bivens* claims for constitutional torts against Bomkamp. In *Bivens v. Six Unknown Agents*

*of the Federal Bureau of Narcotics*, the Supreme Court held that a plaintiff may seek a monetary

remedy for violations of his or her constitutional rights (in that case, a violation of the Fourth

Amendment) even in the absence of an express cause of action. 403 U.S. at 395–97. In recent

years, however, the Supreme Court has "emphasized that recognizing a cause of action under

9

*Bivens* is a disfavored judicial activity." *Egbert v. Boule*, 596 U.S. 482, 491 (2022) (citation modified). When considering whether to do so, a court must first assess whether the case "presents a new *Bivens* context . . . meaningfully different from the three cases in which the [Supreme] Court has implied a damages action." *Id.* at 492 (citation modified). Those three cases are *Bivens* itself; *Davis v. Passman*, 442 U.S. 228 (1979), concerning sex discrimination under the Fifth Amendment; and *Carlson v. Green*, 446 U.S. 14 (1980), concerning Eighth Amendment violations by federal prison officials. *See Egbert*, 596 U.S. at 490–91. Then, if a claim would involve expanding *Bivens* to a new context, the court must determine whether special factors caution against authorizing a *Bivens* cause of action in that situation. *Id.* at 492–93; *see also id.* at 509–11 (Sotomayor, J., concurring in part and dissenting in part). One particularly weighty factor to consider is whether Congress has already provided "an alternative remedial structure" capable of accommodating such claims. *Id.* at 493 (citation modified); *see also Jones v. U.S. Secret Serv.*, 143 F.4th 489, 494–95 (D.C. Cir. 2025).

Here, Plaintiff's claims involve expanding *Bivens* to a new context beyond those previously recognized by the Supreme Court. Plaintiff's allegations that Bomkamp violated his due process rights by mismanaging a federal bankruptcy proceeding, including by permitting a violation of a state restraining order to occur, bear no resemblance to the constitutional violations at issue in *Bivens*, *Davis*, or *Carlson*. Notably, Plaintiff appears to concede that his claims would require recognizing a new type of damages action under *Bivens*. *See* Dkt. 56 at 46.

As for step two of the analysis, the Court concludes that "special factors" counsel against authorizing a constitutional damages suit against a trial attorney in the U.S. Trustee's Office based on that attorney's handling of a bankruptcy proceeding. *See Ziglar v. Abbasi*, 582 U.S. 120, 136 (2017). Congress has already provided avenues for Cohan to seek judicial review of

10

the U.S. Trustee's decisions or actions.  First, Cohan may file motions before the Bankruptcy Court challenging Bomkamp's conduct in that forum—an avenue Plaintiff has in fact pursued on several occasions.  *See, e.g.*, Motion for Expedited Rulings at 1, *In re Genie* (Bankr. M.D. Fla. Mar. 20, 2025), Dkt. 337 (a motion filed by Plaintiff asking the Bankruptcy Court to rule on alleged "constitutional violations, procedural misconduct, and bad-faith litigation committed by the [U.S.] Trustee").  Then, if the Bankruptcy Court were to rule against Cohan, he may file an appeal with the United States District Court for the Middle District of Florida, which has jurisdiction over final judgments and (some) interlocutory orders of the Bankruptcy Court overseeing *In re Genie*.  *See* 28 U.S.C. § 158(a).  Permitting an additional, parallel damages suit in a separate district court, as Plaintiff seeks, would undermine Congress's chosen scheme, encourage collateral litigation by debtors (or creditors) unhappy with the course of a bankruptcy proceeding, and risk contradictory commands by different tribunals with respect to the same underlying controversy.  Indeed, it is far from clear that this Court has jurisdiction to review matters that are appealable from the Bankruptcy Court for the Middle District of Florida to the United States District Court in that district.

In his opposition to the motion to dismiss, Plaintiff highlights two reasons why this Court should nonetheless recognize a *Bivens* cause of action.  Both fail to persuade.  First, Plaintiff argues that Bomkamp's alleged doctoring of the recording of the 341 Meeting means that he cannot assemble the record necessary to mount an effective appeal to the United States District Court for the Middle District of Florida.  *See* Dkt. 56 at 46–48.  But Plaintiff does not explain why this Court is better situated than the Bankruptcy Court or the Middle District of Florida to consider his arguments; even accepting that Bomkamp's alleged malfeasance has in fact deprived Plaintiff of some probative evidence, that absence would be felt equally in any judicial

11

forum and does not favor a damages suit in this Court over other remedial possibilities. Second, Plaintiff protests that when he did attempt to appeal in forma pauperis in the Florida Bankruptcy Court, Judge Burgess denied his motion on the basis that the appeal was frivolous. *Id.* at 47; *see also* Findings of Fact and Conclusions of Law on Order Denying Motion for Leave to Appeal, *In re Genie* (Bankr. M.D. Fla. Nov. 25, 2025), Dkt. 492; *Cohan v. Cohen*, No. 3:25-cv-1398 (M.D. Fla.) (Plaintiff's appeal of the bankruptcy proceeding before the U.S. District Court for the Middle District of Florida). The fact that some of Plaintiff's efforts to obtain relief in the bankruptcy proceeding have failed on the merits does not mean that those avenues are unavailable to him or otherwise weigh in favor of a collateral *Bivens* remedy in this case.

Because Plaintiff has failed to state a claim for a *Bivens* remedy in this new context, the Court will grant the motion to dismiss the complaint in its entirety.[7]

## C.     Leave to Amend

In addition to opposing the motion to dismiss, Plaintiff has requested leave to file a second amended complaint to add further detail to his allegations. *See* Dkt. 67. Although "[t]he decision to grant or deny leave to amend . . . is vested in the sound discretion of the trial court," *Doe v. McMillan*, 566 F.2d 713, 720 (D.C. Cir. 1977), "[t]he [C]ourt should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2). The Court may, however, deny a motion to amend as futile if the amended complaint "would not survive a motion to dismiss." *James Madison Ltd. ex rel. Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996). Other factors such

---

[7] The Court will also dismiss Plaintiff's *Bivens* claims as to the unnamed Doe "co-conspirators or participants." Dkt. 29 at 1 (Am. Compl. ¶ 5). Beyond the same issue of authorizing a new *Bivens* cause of action, the amended complaint also fails to allege with specificity any conduct by any unnamed defendant or identify any claim to relief arising from such conduct. *See Kurtz v. United States*, 798 F. Supp. 2d 285, 292–93 (D.D.C. 2011); *Collingsworth v. Drummond Co.*, No. 19-cv-1263, 2020 WL 2800612, at *14–15 (D.D.C. May 29, 2020).

as undue delay or prejudice can also warrant denying leave to amend. *Smith v. Café Asia*, 598 F. Supp. 2d 45, 47 (D.D.C. 2009).

Plaintiff's proposed second amended complaint first asserts four *Bivens* claims against Bomkamp. Three of those claims (Counts 1, 2, and 4) are brought under the Fifth Amendment and essentially duplicate the *Bivens* claims included in Plaintiff's first amended complaint—they allege that Bomkamp altered evidence, exposed Cohan to danger by violating the restraining order, and denied him access to the courts by destroying necessary evidence. Dkt. 67-1 at 12–17, 19–21 (2d Am. Compl. ¶¶ 62–87, 97–108). These claims are futile for the reasons discussed above. The same is true for Count 3 in Plaintiff's proposed second amended complaint, which alleges that Bomkamp altered evidence in the record of the bankruptcy proceeding in retaliation for Cohan's litigation activity. *Id.* at 17–19 (2d Am. Compl. ¶¶ 88–96). Notably, the alleged retaliation occurred in the very proceeding that Plaintiff seeks to collaterally attack before this Court. As with the prior claims, that count would require authorizing a new form of *Bivens* relief that would encourage collateral litigation outside of Congress's chosen forum for litigating bankruptcy proceedings and that would disrupt the orderly resolution of those proceedings.

The proposed complaint also asserts two common law tort claims against Bomkamp and unnamed Doe Defendants. First, Count 5 asserts a claim for abuse of process based on Bomkamp's alleged manipulation of the docket of the bankruptcy proceeding and the U.S. Trustee's false claims that Genie had engaged in fraud. *Id.* at 21–24 (2d Am. Compl. ¶¶ 109–25). Second, Count 6 asserts a claim for intentional infliction of emotional distress caused by Bomkamp's violation of the restraining order and subsequent cover-up. *Id.* at 24–27 (2d Am. Compl. ¶¶ 126–36). Defendant makes a reasonable argument that these common law tort claims are untimely and prejudicial, given that Plaintiff included similar allegations in his original

complaint, *see* Dkt. 1 at 3–4 (Compl. ¶¶ 1, 3–5), only to abandon them and to proceed solely with the *Bivens* claims in the amended complaint before belatedly seeking to reassert the common law claims several months later in his proposed second amended complaint, *see* Dkt. 70 at 18–20.  Nonetheless, in light of Plaintiff's *pro se* status, the Court will overlook those procedural deficiencies and assess the claims on the merits.

Plaintiff's common law tort claims are futile as they would not survive a motion to dismiss.  The Westfall Act, 28 U.S.C. § 2679(b)(1), "accords federal employees absolute immunity from common[]law tort claims arising out of acts they undertake in the course of their official duties."  *Osborn v. Haley*, 549 U.S. 225, 229 (2007).  The statute authorizes the Attorney General "to certify that the employee 'was acting within the scope of his office or employment at the time of the incident out of which the claim arose,'" *id.* at 229–30 (quoting 28 U.S.C. § 2679(d)(1), (2)), at which point "the employee is dismissed from the action, and the United States is substituted as defendant in place of the employee," *id.* at 230.  Once the United States has been substituted, "the suit is governed by the Federal Tort Claims Act ('FTCA') and is subject to all of the FTCA's exceptions for actions in which the [United States] has not waived sovereign immunity."  *Wuterich v. Murtha*, 562 F.3d 375, 380 (D.C. Cir. 2009) (citing *Osborn*, 549 U.S. at 230).

In response to Plaintiff's original complaint, which included similar factual allegations against Bomkamp, the United States filed a "Notice of Westfall Certification" reporting that "the Department of Justice has certified that Defendant Scott Bomkamp was acting within the scope of his employment as an officer or employee of the United States at the time of the incidents alleged in this action" and seeking to substitute the United States as a defendant.  Dkt. 17 at 1.  If the same Westfall Certification were to apply to Plaintiff's proposed second amended

14

complaint—and the Court sees no reason why it would not—it would be fatal to his claims.  As discussed above, with the United States substituted in Bomkamp's place, Plaintiff's tort claims would be governed by the FTCA, 28 U.S.C. §§ 1346, 2671 *et seq.*, including that statute's administrative exhaustion requirement, *id.* § 2675(a).  The FTCA provides that "[a]n action shall not be instituted upon a claim against the United States" under that statute "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing."  *Id.*  A plaintiff's failure to exhaust administrative remedies deprives the district court of jurisdiction over the suit.  *See, e.g.*, *Tookes v. United States*, 811 F. Supp. 2d 322, 331 (D.D.C. 2011) (citing *GAF Corp. v. United States*, 818 F.2d 901, 904 (D.C. Cir. 1987)).  Plaintiff does not allege that he exhausted his administrative remedies with regard to any tort claims under the FTCA; nor does he discuss any attempts at exhaustion in his reply to Defendant's opposition to his motion for leave to file.  *See generally* Dkt. 67-1 (2d Am. Compl.); Dkt. 71 at 2–3.

Rather than argue that the Court would have jurisdiction over his common law tort claims under the FTCA, Plaintiff instead contends that, notwithstanding the Attorney General's certification, Bomkamp was not acting within the scope of his employment at the relevant times. Dkt. 71 at 2–3.  The Attorney General's certification creates a "rebuttable presumption that the employee has absolute immunity from the lawsuit and that the United States is to be substituted as the defendant," but a plaintiff may rebut the presumption by "alleg[ing], in either the complaint or a subsequent filing, specific facts that, taken as true, would establish that the defendant's actions exceeded the scope of his employment."  *Jacobs v. Vrobel*, 724 F.3d 217, 220 (D.C. Cir. 2013) (citation modified).  In assessing the defendant's activities, the court may

15

"consider the substantive law of the jurisdiction where the employment relationship exists," which in this case would be Florida. *Id.* at 221. Under Florida law:

> An employee acts "within the scope of his employment . . . only if (1) the conduct is of the kind the employee is hired to perform, (2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) the conduct is activated at least in part by a purpose to serve the master."

*Morera v. Sears Roebuck & Co.*, 652 Fed. App'x 799, 801 (11th Cir. 2016) (alteration in original) (quoting *Sussman v. Fla. E. Coast Props., Inc.*, 557 So. 2d 74, 75–76 (Fla. Dist. Ct. App. 1990)).

Plaintiff has failed to allege or otherwise to identify any facts that might rebut the presumption created by the Westfall Certification. To the contrary, it is apparent that Bomkamp was acting within the scope of his employment with the U.S. Trustee's Office when he supervised the 341 Meeting at which Ekuta allegedly spoke. Indeed, the relevant provision of the Bankruptcy Code specifically charges "the United States trustee" with convening and presiding over such a meeting. 11 U.S.C. § 341(a). The same is true for any of Bomkamp's filings in the *In re Genie* proceeding, which he litigated as a trial attorney on behalf of the U.S. Trustee. Plaintiff's only argument in response is that Bomkamp's employer would not have expected him to file an inaccurate recording or to permit Ekuta to violate a restraining order. Dkt. 71 at 3–4. That contention, however, misunderstands the relevant inquiry, which asks not whether Bomkamp allegedly acted unlawfully or improperly in carrying out his official duties, but only whether the underlying activity was of the type that Bomkamp was hired to perform and occurred at the time and place of his employment. "[T]he potentially wrongful nature of the activities is irrelevant." *Plevnik v. Sullivan*, No. 23-cv-837, 2023 WL 7279229, at *4 (D.D.C. Nov 3, 2023) (citing *Smith v. Clinton*, 886 F.3d 122, 126 (D.C. Cir. 2018)). The Westfall Act's

16

scope of employment standard "is broad enough to embrace any intentional tort arising out of a dispute that was originally undertaken on the employer's behalf." *Clinton*, 886 F.3d at 127 (citation modified).  Plaintiff's common law claims—arising from Bomkamp's meeting with creditors, litigation filings, and other administrative activities in connection with an ongoing bankruptcy proceeding on behalf of the U.S. Trustee—so qualify.  Accordingly, the United States is substituted as a defendant, and the Court lacks jurisdiction under the FTCA owing to Plaintiff's failure to exhaust.

Plaintiff's proposed second amended complaint also includes a claim (Count 8) seeking to enjoin Bomkamp from continuing to participate in the *In re Genie* proceedings.  Dkt. 67-1 at 28 (2d Am. Compl. ¶¶ 142–48).  Plaintiff does not identify a specific cause of action for this claim, but he does reference federal ethics regulations concerning conflicts of interest by federal employees.  *Id.* (2d Am. Compl. ¶ 144) (citing 5 C.F.R. § 2635.502).  Even assuming for the sake of argument that the relevant regulations allow for private enforcement, *but see* 5 C.F.R § 2635.501 (discussing internal agency decisionmaking rather than private civil enforcement), those regulations generally deal with matters in which a federal employee has a financial interest in a particular matter or a personal relationship with a person with a stake in the matter.  *See* 5 C.F.R. § 2654.502(a).  Plaintiff, by contrast, alleges only that Bomkamp should be recused from the bankruptcy proceeding because he is "being personally sued for misconduct arising from that case."  Dkt. 67-1 at 28 (2d Am. Compl. ¶ 148).  The government ethics regulations do not empower Cohan to manufacture a conflict of interest where none previously existed simply by accusing a federal employee of misconduct, or even by seeking to litigate that misconduct in another forum.  If filing a lawsuit were enough to disqualify a federal employee, then any person

17

with business involving a federal agency could do so whenever they disagreed with that employee's decisions.[8]  No regulation or principle of law dictates that result.

Finally, Count 7 of Plaintiff's proposed second amended complaint seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that Bomkamp's conduct violated Cohan's constitutional rights under the First and Fifth Amendments.  Dkt. 67-1 at 27 (2d Am. Compl. ¶¶ 137–41).  The Declaratory Judgment Act does not create a separate cause of action, but merely offers a separate form of relief in a preexisting suit based on a "judicially remediable right."  *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) (citation modified).  Because Plaintiff's other asserted causes of action under *Bivens*, the FTCA, and the common law are all futile for the reasons described above, he has no further "basis upon which to seek declaratory relief."  *Id.*  And even if the Court were to consider Plaintiff's request, the Declaratory Judgment Act empowers, but does not require, the Court to issue declaratory relief when its jurisdictional prerequisites are satisfied.  *Morinville v. U.S. Pat. & Trademark Off.*, 442 F. Supp. 3d 286, 296 (D.D.C. 2020) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995)).  In this case, the Court would exercise its discretion to decline to invoke the Declaratory Judgment Act "because an alternative remedy exist[s]."  *Id.*  As described above, Plaintiff's objections to Bomkamp's handling of his responsibilities in the underlying bankruptcy proceeding can be raised in that forum, and then, if appropriate, on appeal to the U.S. District Court for the Middle District of Florida.  The Court will not preempt or otherwise interfere with the adjudication of matters

---

[8] In analogous situations involving attacks on a judge's impartiality, courts agree that "the mere fact that a party has filed a . . . motion" accusing a judge of bias or prejudice "does not automatically result in the challenged judge's disqualification."  *Klayman v. Judicial Watch, Inc.*, 278 F. Supp. 3d 252, 256 (D.D.C. 2017) (citation modified).

pending in a sister court, which Congress designated as the appropriate forum, by entering declaratory relief in this collateral litigation.

**D.      Order to Show Cause**

That leaves Plaintiff's (renewed) motion for an order to show cause why Bomkamp should not be recused from *In re Genie*.  *See* Dkt. 42.  As Defendant notes, that motion, which is premised on the alleged conflict of interest created by this private suit against Bomkamp, is effectively moot now that the Court has dismissed Plaintiff's claims.  Dkt. 51 at 30.  Even if it were not, the Court would still deny the motion for reasons similar to those discussed above regarding the putative second amended complaint's request for an injunction disqualifying Bomkamp.  Plaintiff does not identify any grounds for requiring Bomkamp's recusal, let alone any reason why his request to disqualify Bomkamp for alleged ethical conflicts should be made in this forum rather than before Judge Burgess or the United States District Court for the Middle District of Florida.  The motion's additional arguments that Bomkamp's litigation behavior in *this* case, such as the delay in accepting service caused by the 2025 government shutdown and the timing of some of the government's filings, *see* Dkt. 42 at 19–22, separately require his recusal are wholly without merit.

**CONCLUSION**

For the foregoing reasons, the Court will **DENY** Plaintiff's motion for an order to show cause, Dkt. 42, will **GRANT** in part and **DENY** in part Plaintiff's motion to take judicial notice, Dkt. 46, will **GRANT** Defendant's motion to dismiss, Dkt. 51, and will **DENY** Plaintiff's motion for leave to file an amended complaint, Dkt. 67.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  June 16, 2026

20